# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| DAMIEN DUANE DOXLEY, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:19-cv-00029-RWS |
| IAN WALLACE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Damien Duane Doxley for leave to commence this civil action without prepayment of the filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $2.38. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion to proceed in forma pauperis, plaintiff has submitted a copy of his certified inmate account statement. (Docket No. 3). The inmate account statement shows an average monthly deposit of $11.92. The Court will therefore assess an initial partial filing fee of $2.38, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the

plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently incarcerated at the South Central Correctional Center in Licking, Missouri. At the time relevant to this complaint, however, he was an inmate at the Southeast Correctional Center (SECC) in Charleston, Missouri. He brings this pro se action pursuant to 42 U.S.C. § 1983. His complaint names Ian Wallace, Alan Earls, Jason Lewis, Unknown Applegate, Brandi Meredith, Unknown Beggs, Carl Jacobson, Jessup Mae, Bill Stange, and SECC as defendants. The defendants are sued in both their individual and official capacities.

The complaint arises out of plaintiff's placement into administrative segregation following a prison disciplinary hearing. Plaintiff alleges that on April 16, 2016, inmate Jonathan Jamison was placed into an administrative segregation cell with him. (Docket No. 1 at 5). Less than twenty-four hours later, inmate Jamison requested protective custody. Plaintiff asserts that requesting protective custody is the only way to move to a different cell without receiving a conduct violation. Inmate Jamison subsequently left plaintiff's cell. Two to three months later, inmate Jamison accused plaintiff of tying him to a bunk with bed sheets and sexually assaulting him.

3

By the time of inmate Jamison's allegations, plaintiff had been released from administrative segregation. Following the accusation, plaintiff was placed back into administrative segregation while an investigation was conducted.

Plaintiff states that defendant Unknown Applegate investigated inmate Jamison's allegations and determined they were unfounded. He asserts this means that the allegation was "determined never to have occurred." Upon conclusion of Investigator Applegate's investigation, plaintiff was released from administrative segregation. Plaintiff states that defendant Carl Jacobson advised him "that the investigation was concluded and unfounded."

Twenty-two days later, defendant Bill Stange ordered plaintiff back into administrative segregation and issued a conduct violation for forcible sexual misconduct. Plaintiff asserts that defendant Jacobson rewrote the conduct violation despite knowing the investigation showed it to be unfounded. (Docket No. 1 at 6). Plaintiff alleges that the actions of defendants Stange and Jacobson violated his Fourteenth Amendment right to due process. (Docket No. 1 at 7).

Shortly thereafter, plaintiff states that he had a major conduct violation disciplinary hearing. (Docket No. 1 at 5). At that hearing, defendants Unknown Beggs and Jessup Mae found plaintiff guilty of the violation, "despite having no evidence to substantiate the allegations except what was in the body of the conduct violation." Plaintiff further states that defendants Beggs and Mae disregarded the evidence he submitted. He claims that the actions of defendants Beggs and Mae violated his Fourteenth Amendment right to due process. (Docket No. 1 at 7).

Plaintiff states that he initiated, utilized, and exhausted the grievance process by appealing the conduct violation and by requesting dismissal and expungement. (Docket No. 1 at 6). However, he states that his informal resolution request (IRR) and grievances were denied. He alleges that defendants Brandi Meredith, Ian Wallace, and Alan Earls all responded in one way or another to

his grievances, and all were aware that he was issued a conduct violation after the initial investigation was unfounded. Specifically, he states that defendant Meredith reviewed his IRR; that defendant Wallace sent him a grievance appeal response; and that defendant Earls failed to overturn his violation when he filed a grievance appeal. (Docket No. 1 at 7-8; Docket No. 1-1 at 8). Plaintiff claims that the actions of defendants Meredith, Wallace, and Earls violated his Fourteenth Amendment right to due process. (Docket No. 1 at 7-8).

Plaintiff alleges that Warden Jason Lewis failed to take corrective action, even after plaintiff "advised [him] of the situation." (Docket No. 1 at 8). He states that this violates his Fourteenth Amendment right to due process. He further states that SECC violated his right to be free from cruel and unusual punishment by placing him in administrative segregation for "unfounded false allegations."

As a result of this incident, plaintiff alleges that he has suffered mental and emotional anguish from being "unjustly placed" in administrative segregation and being "labeled sexually aggressive." (Docket No. 1 at 9).

Plaintiff seeks to have his conduct violation dismissed and expunged; for the Court to order SECC to issue inmate Jamison a conduct violation for falsely alleging that plaintiff sexually assaulted him; and for the Court to order defendants to pay punitive damages for unnecessary administrative segregation confinement and for mental and emotional anguish. (Docket No. 1 at 11-12).

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 claiming that defendants violated his Fourteenth Amendment right to due process when he was given a conduct violation for an

5

incident that had initially been declared unfounded. For the reasons discussed below, plaintiff's complaint must be dismissed for failure to state a claim.

**A. Official Capacity Claims and Claim Against SECC**

Plaintiff's official capacity claims against defendants Wallace, Earls, Lewis, Applegate, Meredith, Beggs, Jacobson, Mae, and Stange, as well as his claim against SECC, must be dismissed.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating

6

that "a state is not a person for purposes of a claim for money damages under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

Plaintiff asserts that defendants Wallace, Earls, Lewis, Applegate, Meredith, Beggs, Jacobson, Mae, and Stange are employed by the Missouri Department of Corrections. The Missouri Department of Corrections is a department of the State of Missouri. As noted above, official capacity claims against an individual are really claims against that individual's employer. However, to the extent that plaintiff is seeking money damages, the State of Missouri is not a § 1983 person. Furthermore, his claims against the State are barred by the doctrine of sovereign immunity. Thus, his official capacity claims against defendants Wallace, Earls, Lewis, Applegate, Meredith, Beggs, Jacobson, Mae, and Stange must be dismissed.

Plaintiff's claim against SECC likewise fails, because SECC is part of the Missouri Department of Corrections, and is therefore not a § 1983 person. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1086 (8th Cir. 1991) (stating that an agency exercising state power is not a person subject to suit under § 1983). Furthermore, SECC is also entitled to sovereign immunity under the Eleventh Amendment. *See Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

To the extent that plaintiff is seeking injunctive relief, he has still failed to allege any facts to support official capacity liability against defendants.

A governmental entity can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To do so, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Specifically, a plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially establish liability in an official capacity suit.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

8

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Plaintiff has not presented allegations regarding any of the three methods for establishing the liability of a governmental entity. Specifically, his facts do not mention any correctional policy or custom, and he does not suggest that there has been a deliberately indifferent failure to train employees. Indeed, the facts he has presented are in the nature of individual capacity, rather than official capacity claims. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (stating that

individual capacity suits generally "involve actions taken by governmental agents outside the scope of their official duties," while official capacity suits involve either allegedly unconstitutional policies or actions taken by a governmental agent who possess final authority over a particular decision). As such, his official capacity claims must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

For the reasons discussed above, plaintiff's official capacity claims against defendants Wallace, Earls, Lewis, Applegate, Meredith, Beggs, Jacobson, Mae, and Stange, as well as his claim against SECC, must be dismissed for failure to state a claim.

**B. Individual Capacity Claims Against Defendants Stange and Jacobson**

Plaintiff's individual capacity claims against defendants Stange and Jacobson must be dismissed for failure to state a claim.

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). A plaintiff bringing a § 1983 action must include in his complaint "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015).

Plaintiff alleges that defendant Stange overturned an investigator's conclusion and ordered a conduct violation issued against him. He further alleges that defendant Jacobson rewrote the

conduct violation, despite knowing that an initial investigation had determined that the accusations were unfounded. This does not state a constitutional violation, because the mere filing of a disciplinary report by a correctional officer does not give rise to a § 1983 cause of action. *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983) (explaining that no cause of action had been stated against defendants who had only initiated the action that resulted in a disciplinary hearing). Therefore, plaintiff's individual capacity claims against defendants Stange and Jacobson must be dismissed.

### C. Individual Capacity Claim Against Defendant Applegate

Plaintiff's individual capacity claim against defendant Applegate must be dismissed because he has not alleged that Applegate violated a constitutional right. To state a § 1983 claim, a plaintiff must allege that the defendant violated a right secured by the Constitution and laws of the United States. *Wong*, 820 F.3d at 934. Here, the only facts relating to defendant Applegate state that Applegate investigated the sexual assault allegations against plaintiff and found them unfounded. Plaintiff insists throughout the complaint that Applegate's initial investigation was correct. Indeed, the basis of his action is that defendant Applegate's initial investigation was overturned. Plaintiff not only fails to show that defendant Applegate violated his rights, but he clearly supports the findings of Applegate's investigation. Because plaintiff has not alleged that defendant Applegate violated one of his constitutional rights, the individual capacity claim against Applegate must be dismissed.

### D. Individual Capacity Claims Against Defendants Beggs and Mae

Plaintiff's individual capacity claims against defendants Beggs and Mae must be dismissed for failure to state a claim, because he has not shown that he was deprived of a protected liberty interest.

The determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

Plaintiff has not alleged that life or property is at interest in this case; thus, he must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. Here, he states that he was unnecessarily placed into administrative segregation.

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, in order to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that

administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Here, plaintiff alleges that defendants Beggs and Mae found plaintiff guilty of a conduct violation at a disciplinary hearing despite having no evidence to substantiate the allegations. However, as noted above, before reaching the question of what process is due, plaintiff must demonstrate that he had a protected liberty interest in the first place. Plaintiff has not done this, because he fails to assert any allegations that his placement into administrative segregation was an "atypical and significant hardship." For instance, he presents no facts as to how long he was in administrative segregation, no facts as to the conditions of administrative segregation, and no facts as to what privileges might have been curtailed. Thus, he has not established the existence of a liberty interest and has failed to state a cognizable due process claim.

Even if it is assumed that plaintiff asserted a protected liberty interest, he has still failed to show a violation of due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). When an inmate is deprived of privileges or placed in special confinement status as punishment for past misconduct, due process requires a hearing beforehand. *Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992). Nevertheless, "[p]rison disciplinary proceedings are not part of

a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Gonzalez-Perez v. Harper*, 241 F.3d 633, 637 (8th Cir. 2001). To that end, due process requirements include written notice of the charge; a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action; the right of the inmate to be present, call witnesses, and present documentary evidence; and, in limited situations, a counsel substitute. *See Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).

Plaintiff has not alleged that he was not provided with a hearing. He has not alleged that he did not receive written notice of the charge or a written statement by the factfinders. He has also not alleged that he was not present or unable to present witnesses and evidence. Instead, he claims that defendants Beggs and Mae made their decision without any evidence, except what was in the body of the conduct violation. Plaintiff further asserts that defendants Beggs and Mae disregarded his documentary evidence. However, all that is required to satisfy due process is the existence of "some evidence" that supports the disciplinary decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The conduct violation adduced at the hearing amounts to "some evidence." *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (stating that a corrections officer's description of events constitutes some evidence upon which a prison disciplinary committee could determine that an inmate violated a prison rule).

Ultimately, plaintiff is claiming that his right to due process was violated because he disagrees with the result of his disciplinary hearing. His right to due process, though, is not violated simply because he did not prevail. *See Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (stating that prisoner had no protected liberty interest in the outcome of his routine disciplinary proceeding, and district court properly dismissed his claims against the defendants who were

involved in this proceeding). Therefore, for the reasons discussed above, plaintiff's individual capacity claims against defendants Beggs and Mae must be dismissed.

### E. Individual Capacity Claims Against Defendants Meredith, Wallace, and Earls

Plaintiff's individual capacity claims against defendants Meredith, Wallace, and Earls must be dismissed because their roles in the grievance process did not violate plaintiff's constitutional rights.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy*, 100 F.3d at 643. As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847. To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Here, plaintiff states that defendant Meredith reviewed his IRR; that defendant Wallace sent him a grievance appeal response; and that defendant Earls failed to overturn his violation when he filed a grievance appeal. He asserts that their actions violated his right to due process under the Fourteenth Amendment. Notwithstanding plaintiff's assertion, none of these allegations state a constitutional violation, because SECC's grievance procedure does not confer upon him a

substantive right. Therefore, plaintiff's individual capacity claims against defendants Meredith, Wallace, and Earls must be dismissed.

### F. Plaintiff's Individual Capacity Claim Against Defendant Lewis

Plaintiff's individual capacity claim against defendant Lewis must be dismissed because he has not established that Lewis is liable for a constitutional violation. First, as discussed above, plaintiff has not adequately alleged that his placement into administrative segregation after a disciplinary hearing was unconstitutional. It thus follows that defendant Lewis cannot be liable for failing to correct a nonexistent violation.

Second, liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights).

Here, even assuming that the conduct violation and disciplinary hearing violated his right to due process, plaintiff's only allegation against defendant Lewis is that Lewis was "advised" by plaintiff of the "situation" and failed "to take corrective action." This type of vague and conclusory pleading does not demonstrate defendant Lewis's responsibility. That is, plaintiff does not provide any facts to show how Lewis was advised, when he was advised, or what information he received. His brief statement regarding Lewis is insufficient to establish "a causal link to, and direct responsibility for, the alleged deprivation of rights."

Finally, to the extent that plaintiff is relying on defendant Lewis's position as warden to establish his responsibility, such a claim must fail. Vicarious liability is inapplicable to § 1983 suits. *Marsh*, 902 F.3d at 754. Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury). In particular, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Here, plaintiff has failed to allege any failure to train or supervise on Lewis's part.

For the reasons discussed above, plaintiff's individual capacity claim against defendant Lewis must be dismissed.

### G. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The motion will be denied as moot as this action is being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $2.38 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison

registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 21st day of June, 2019.

/s/ Rodney W. Sippel
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE